**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DZHONIBEK RASULOV,<br><br>        Petitioner,<br><br>    v.<br><br>ERNESTO SANTACRUZ JR., ET AL.,<br><br>        Respondents. | Case No. 5:26-cv-01815-AJR<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

**I.**

**INTRODUCTION**

On April 13, 2026, Petitioner Dzhonibek Rasulov ("Petitioner"), an immigration detainee represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody.  (Dkt. 1 at 2.)  Also on April 13, 2026, Petitioner filed an *Ex Parte* Motion for Temporary Restraining Order.  (Dkt. 3.)  On April 20, 2026, Respondents Ernesto Santacruz Jr., Field Office Director, Immigration and Customs Enforcement ("ICE") Los Angeles Field Office, Todd M. Lyons, Director, U.S. ICE, Markwayne Mullin, Secretary, Department of Homeland Security, Todd Blanche,

Acting Attorney General of the United States, and Warden of the Desert View Facility in Adelanto, California (collectively, "Respondents") filed an Answer to the Petition stating that "[t]he Respondents are not presenting an opposition argument at this time." (Dkt. 10.)  The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes.  (Dkts. 4, 8.)  For the reasons set for the below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on his prior conditions of parole.

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition.  Respondents had the opportunity to dispute the facts alleged in the Petition, but declined to do so.  (Dkt. 10.)  Accordingly, the facts alleged in the Petition are undisputed and have been conceded by Respondents.  See C.D. Cal. L.R. 7-12.

Petitioner is a citizen and national of Russia (and dual citizen of Tajikistan), born on September 3, 1993.  (Dkt. 1 at 10.)  Petitioner applied for admission to the United States on May 20, 2023, at San Ysidro, California through the Customs and Border Protection ("CBP") One program.  (Id.)  On the same date, CBP issued Petitioner a Notice to Appear, charging him with inadmissibility pursuant to Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I)—arriving at a port of entry without valid entry documents.  (Id.)  Following his admission to the CBP One parole program, Petitioner was released from custody.  (Id.)  Petitioner filed an application for asylum (Form I-589) on or about May 10, 2024.  (Id.)  Petitioner's removal proceedings were conducted before the West Los Angeles Immigration Court.  (Id.)

Prior to Petitioner's December 2025 arrest, Petitioner was residing in Los Angeles, California.  (Id. at 11.)  Petitioner was employed as a self-employed

delivery driver, supporting his wife and two young children, including a U.S. citizen infant. (Id.) Petitioner was living in full compliance with the conditions of his parole and the requirements of his immigration proceedings. (Id.) On the night of December 22, 2025, Petitioner was driving his vehicle for work near Western Avenue and Institute Place in Hollywood, California. (Id.) An unknown woman approached his car at a stop sign and offered sex services. (Id.) Petitioner refused and continued driving. (Id.) Shortly thereafter, police officers stopped Petitioner's vehicle and arrested him on a misdemeanor charge of soliciting sexual activity. (Id.) Petitioner cooperated fully with the officers. (Id.)

Petitioner was transported first to the Hollywood police station, then transferred to Van Nuys County Jail. (Id.) At approximately 8:00 a.m. on December 23, 2025, Petitioner was released from criminal custody. (Id.) ICE agents immediately took Petitioner into immigration detention without any prior hearing, judicial order, or individualized determination that he posed a flight risk or danger to the community. (Id.) No criminal charges have been filed against Petitioner arising from the December 22, 2025 incident. (Id.) Petitioner was held at the ICE field office in downtown Los Angeles for more than one week. (Id.) On December 28, 2025, Petitioner was transferred to the Desert View Annex in Adelanto, California. (Id.) Petitioner has been continuously detained at the Desert View Facility since December 28, 2025. (Id.) Petitioner's removal proceedings remain pending before the Immigration Court and there is no final order of removal. (Id.)

### III.

### SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief alleges violations of his substantive due process rights under the Fifth Amendment based on his re-detention following release on parole. (Dkt. 1 at 12.) Petitioner's second claim for relief alleges

violations of his procedural due process rights under the Fifth Amendment based on his detention without notice and a pre-deprivation hearing.  (Id. at 12-13.)  Petitioner seeks immediate release from custody and an order prohibiting Respondents from re-detaining him unless they provide a pre-deprivation hearing at which the Government bears the burden of proof by clear an convincing evidence to show that Petitioner is a flight risk or danger to the community.  (Id. at 13.)  Finally, Petitioner seeks an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA").  (Id.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation."  Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two

types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights."  Regino, 133 F.4th at 959-60.  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests."  Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest."  Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted).  With that careful description in mind, courts must then decide whether the asserted interest is

"objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

# V.

## ANALYSIS

It is undisputed that Petitioner entered the United States in May of 2023, was admitted to the CBP One parole program, and was then released from custody on parole.[1] (Dkt. 1 at 10.)  It is also undisputed that Petitioner was in full compliance with the conditions of his parole and the requirements of his immigration proceedings.  (Id. at 11.)  Thus, the Court concludes that once Petitioner was released from custody on parole, he acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country.").  Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted).  This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

---

[1] The fact that Petitioner was released from custody necessarily means that he demonstrated to the satisfaction of immigration officials that his release would not pose a danger to property or persons and that he was likely to appear for any future proceeding.  See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

Petitioner's liberty interest in remaining out of custody is strengthened by the several years he spent out of custody building a life for himself in the United States with his family.  See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.").  Indeed, Petitioner was living in Los Angeles, working as a delivery driver, and supporting his wife and two young children, including a U.S. citizen infant.  (Dkt. 1 at 11.) Petitioner's undisputed ties to the community further strengthen his liberty interest in remaining out of custody.  See, e.g., Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

It is also undisputed that Petitioner was detained without notice or a pre-deprivation hearing.  (Dkt. 1 at 11.)  Thus, the Court concludes that Petitioner's detention by ICE on December 23, 2025, without notice or a pre-deprivation hearing, violated his procedural due process rights.  See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Given this violation of Petitioner's due process rights, the Court further

concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).  The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).  The last uncontested status here is Petitioner's prior release on parole before his current re-detention.  See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention.").  "Accordingly, Petitioner's release from custody is the appropriate remedy."  Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.  See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)).  Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral

8

arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

The Court notes that "Respondents are not presenting an opposition argument at this time." (Dkt. 10 at 2.) Therefore, Respondents have consented to the relief requested by Petitioner. See C.D. Cal. L.R. 7-12. Finally, the Court notes that Petitioner also requested an award of reasonable attorney's fees under the EAJA. (Dkt. 1 at 13.) The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner from custody on his prior conditions of parole. Respondents shall also immediately return any confiscated property and documents to Petitioner upon his release. Respondents shall not re-detain Petitioner without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably

assure Petitioner's future appearance and/or the safety of the community.  The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard.  Respondents shall file a notice of compliance no later than **April 23, 2026**.

IT IS SO ORDERED.

DATED:   April 22, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE